Walter H. MENGDEN, Sr., Appellant,

v.

**PENINSULA PRODUCTION COMPANY et al., Appellees.**

No. 915.

Court of Civil Appeals of Texas, Tyler.

March 11, 1976.
Rehearing Denied April 1, 1976.

Thomas H. Lee, Marilyn Aboussie Foreman, Dyess, Prewett, Rosenberg & Henderson, Houston, for appellant.

Ralph J. Graham, Corpus Christi, for appellees.

DUNAGAN, Chief Justice.

This suit involves the pooling provisions of two mineral leases and the farmout agreements by which the leases were assigned. Walter H. Mengden, Sr., the assignee, and Peninsula Production Co., et al., the successors in interest of the assignors, sought declaratory judgments to determine whether Peninsula's reversionary interest under the farmout agreements had become effective. The trial court, without the aid of a jury and on undisputed facts, decreed that this reversion had occurred as to the only part of the leased premises from which production had been obtained. Mengden appealed from that judgment. We affirm that judgment.

The two leases (hereinafter individually referred to as the "A" or "B" lease) covered adjacent tracts of 1713.2 acres each. The lease agreements contained the usual and customary provisions, including a pooling provision. Part of the "A" lease and all of the "B" lease were assigned to Mengden in two farmout agreements by the predecessors in interest of Peninsula. The "Miltex" farmout covered 640 acres of the "A" lease and the "Baria" farmout covered the entire 1713.2 acre "B" lease.

The Miltex and Baria farmout agreements each provided that Mengden's interest in $\frac{1}{4}$ of the gas rights would terminate when he had recovered, after taxes on production accruing to the net working interests, certain enumerated costs and expenses. The Miltex farmout agreement provided that " . . . if you complete any gas well or wells in the Escondido Sand under such lease premises then in lieu of the aforerecited recovery of costs incurred thereon you will be entitled to recover $70,000.00 times the number of such wells on the production accruing to a $\frac{49}{64}$ths of $\frac{8}{8}$ths net working interest therein from such wells before such assignment terminates in part as aforeprovided for."

The conditions which existed upon the Miltex and Baria farmouts at the time of this litigation can best be presented by the following plat:

Miltex farmout

Baria farmout

Outline of #1 Unit

Outline of #3 Unit

Producing gas well

Dry well or meager producer

Mengden drilled five wells on the premises covered by the two farmouts. Each well was located on one of five separate gas units of 320 acres and each well bore the same number as the number of the unit on which it was located. Units # 2, # 4 and # 5 were composed of acreage exclusively from the Baria farmout while units # 1 and # 3 were composed of acreage contributed from both the Miltex and Baria farmouts.[1] Wells # 1 and # 3, located on the Miltex acreage of their respective units,

were completed in the Escondido sand as good commercial gas producers. Wells # 2 and # 5 were dry holes and well # 4 was a meager gas producer which would never produce enough to pay for itself.

In determining whether the reversionary interests of Peninsula had become effective, the trial court found that Mengden had recovered $70,000 per well after taxes on the production accruing to the net working interest of the "A" lease. The trial court

1. The Miltex and Baria farmouts will each be treated, for the sake of simplicity, as contributing 50% of the acreage of units # 1 and # 3.

decreed that the reversion had occurred as to the Miltex farmout.[2]

The sole issue on appeal is whether the production from units # 1 and # 3 should have been allocated to both the Miltex and Baria farmouts under the pooling provisions of the "A" and "B" leases. Mengden contends that the production should be apportioned on the basis of acreage contributed by each farmout to units # 1 and # 3. Peninsula responds that the stipulation in the Miltex farmout agreement of a cost of $70,000 for any gas well completed in the Escondido sand is controlling.

The pertinent portion of the pooling provision in the "A" and "B" leases is as follows: " . . . production . . . from any part of the pooled unit which includes all or a portion of the land covered by this lease . . . shall be considered as . . . production . . . from land covered by this lease . . . ." Pooling of oil and gas leases is a standard practice in the industry and, in the absence of clear language to the contrary, pooling provisions should not be construed in a narrow or limited sense. *Texaco, Inc. v. Lettermann*, 343 S.W.2d 726, 732 (Tex.Civ.App. —Amarillo 1961, writ ref'd n. r. e.). The effect of pooling is sometimes adverse to reversionary interests. *See Southland Royalty Co. v. Humble Oil & Refining Co.,* 151 Tex. 324, 249 S.W.2d 914 (1952). Nevertheless, reversionary owners may protect their estates from adverse effects of pooling by express stipulation. *Southland Royalty Co. v. Humble Oil & Refining Co., supra,* at 917. Clear provisions in an assignment of a lease have been given an effect contrary to a proposed alteration by unitization. *See McLachlan v. Stroube,* 324 S.W.2d 279, 289 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.) and cases therein cited.

Mengden contends that the pooling of Miltex and Baria acreage in units # 1 and

# 3 resulted in the allocation of production from, and costs of, those wells between the Miltex and Baria acreage in those units. Mengden does not argue that 50% of the production should be applied against the dry hole expenses on units # 2 and # 5. His application of the pooling provision would allocate 50% of the actual cost to the Baria acreage while the Miltex acreage would be liable for 50% of the stipulated cost or $35,000. Mengden contends that Peninsula's reversion becomes effective only when these costs have been recovered out of the production accruing to the net working interests under the "A" and "B" leases. We cannot agree with this interpretation of the agreement between the parties.

The farmout agreements provided for reversion when certain costs had been recovered. The provisions listed in detail the recoverable costs which might be incurred by Mengden in drilling, plugging, etc., any well, whether productive or dry, "on such lease premises." Thus, the Miltex farmout limited the recoverable costs to those costs incurred in operations on the "A" lease. This agreement seems contrary to the proposed allocation of 50% of the actual costs to the "B" lease premises in units # 1 and # 3.

Moreover, the Miltex farmout agreement stipulated that any gas well completed in the Escondido Sand under the "A" lease premises would cost $70,000 and that reversion would occur when Mengden had recovered that cost. Mengden's application of the pooling provision would permit recovery in excess of $70,000 from such wells before the reversion would occur. We hold that the above stipulation constituted an express agreement contrary to Mengden's proposed application of the pooling provision.

The judgment of the trial court is affirmed.

---

**2.** This reversion to Peninsula left Mengden with ¾ of the gas rights accruing to the net working interest of the "A" lease. The trial court also decreed that the Baria farmout had terminated with the exception of (1) Mengden's interest in unit # 4, and (2) Mengden's interest in the portions of the farmout included in units # 1 and # 3.